## Commonwealth v. Knoll

*Jeffrey L. Schmehl,* assistant district attorney, for the Commonwealth.
*Stephen B. Lieberman,* for defendant.

SAYLOR, *J.,* February 27, 1985—

## FINDINGS, CONCLUSIONS AND ORDER REGARDING DEFENDANT'S OMNIBUS PRE-TRIAL MOTION FOR SUPPRESSION OF EVIDENCE* AND PETITION FOR WRIT OF HABEAS CORPUS

### FINDINGS OF FACT

1. On September 25, 1984, at approximately 9:40 p.m. an on-duty city police guard and deputy sheriff, Anthony Garipoli, while patroling Skyline Drive, in uniform and in a marked vehicle, observed defendant and a female companion drinking beer (Heineken) at a picnic table in the city park near the Fire Tower.

2. Garipoli asked the pair for their names and identification. The female complied; defendant gave his name but had no identification.

3. Garipoli asked if they had any more beer; defendant said, "Yes, in the car."

4. Defendant then took Garipoli to the car (a 1972 Plymouth station wagon) at which time he observed in plain view on the driver's side of the dash-

board what appeared from his police training to be marijuana.

5. Upon seeing the marijuana, Garipoli placed defendant under arrest for use of alcoholic beverages in a park, a summary offense for which he normally writes up a citation.

6. Garipoli arrested defendant because he saw the marijuana and wanted to detain defendant until back-up, regular police could arrive.

7. At the same time, defendant became nervous, and Garipoli, sensing that something was wrong, decided to pat down defendant for his own protection.

8. Defendant kept reaching for his right rear pocket so Garipoli handcuffed him. Before Garipoli's search got that far, defendant stated, "I have a gun in my pocket," or words to that effect.

9. Garipoli then seized from defendant's right rear pants pocket a loaded handgun, later tested to be in operative condition and identified as a Walther PPK/S·.380 caliber, serial #014585.

10. Garipoli called for back-up assistance, ran a vehicle registration check and learned the station wagon was registered to defendant.

11. In response to the back-up call, Police Officer Theodore Roth arrived at approximately 9:45 p.m.

12. After Garipoli told him what he had done and seen, Roth went to the station wagon and observed, in plain view just to the right of the steering wheel on the dashboard, suspected marijuana on a tin serving tray. Also observed was a roach clip clipped to the ashtray and a pack of "rolling papers."

13. After seeing the marijuana and receiving the gun from Garipoli, Roth placed defendant under arrest for possessing those items and he seized the marijuana and paraphernalia from the station wagon but conducted no further search of it.

14. After placing defendant under oath, Roth asked defendant if he had a license to carry the gun and defendant said, "No."

15. At City Hall, Roth read defendant his Miranda rights and defendant chose to remain silent.

16. A certificate from the State Police indicates that defendant was neither licensed nor provisionally permitted to carry the gun.

## DISCUSSION

While it is true that the rules of criminal procedure generally mandate the use of citations rather than arrests in summary cases, an exception to this general principle is set forth in Rule 51. Subsection A(3) (c) provides that in summary cases not involving traffic offenses, the defendant may be arrested without a warrant by a police officer, but only when (i) such arrest is necessary in the judgment of the officer, and (ii) the officer is in uniform or displays a badge or other sign of authority, and (iii) such arrest is authorized by law. Commonwealth v. Shillingford, 231 Pa. Super. 407, 332 A.2d 824 (1975), held that such an arrest is authorized by law when the summary offense involves a breach of the peace, or endangers property or the safety of any person present. In Commonwealth v. Pincavitch, 206 Pa.Super. 539, 214 A.2d 280 (1965), it was held that underage drinking is not such an offense.

Defendant here was arrested for use of alcohol in a city park. This offense, like underage drinking, does not rise to the level of a breach of the peace, nor does it endanger property or the safety of any person present. Therefore, the proper procedure would have been for the officer to issue a citation rather than arrest defendant.

Moreover, Garipoli testified that he arrested defendant for using alcohol in a park because he saw what he believed to be marijuana in defendant's car and wanted to detain defendant until back-up, regular police could arrive. Where an arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and ensuing search are illegal. Commonwealth v. Macek, 218 Pa. Super. 124, 279 A.2d 772 (1971). To put it another way, the search must be incident to the arrest, and not vice versa. Hence, the initial arrest was illegal and any evidence seized as a result of the illegal arrest must be suppressed. Commonwealth v. Reeves, 223 Pa.Super. 51, 297 A.2d 142 (1972).

## CONCLUSIONS OF LAW

1. Defendant's arrest for using alcohol in a park, a summary offense which does not rise to the level of a breach of the peace, was not authorized by law.

2. The proper procedure would have been to issue a citation rather than to arrest defendant.

3. The arrest was used as an excuse to detain defendant until regular police could arrive and arrest him for possession of marijuana and an unlicensed firearm.

4. The initial arrest was unlawful and the ensuing search was illegal.

5. Any evidence seized and any statements secured from defendant as a result of the illegal search must be suppressed.

Based on the foregoing findings, discussion and conclusions, we enter the following

## ORDER

February 27, 1985, defendant's omnibus pre-trial motion for suppression of evidence is granted, and

the following evidence is ruled inadmissible at trial: the marijuana and related paraphernalia, .380 caliber handgun, and the statements made by defendant following his arrest. Defendant's petition for writ of habeas corpus is denied.