J-S37018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HOWARD LYON, | |
| Appellant | No. 1458 EDA 2014 |

Appeal from the Order April 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0016459-2013

BEFORE:  GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                          **FILED AUGUST 07, 2015**

Appellant, Howard Lyon, appeals from the order denying his petition to the Court of Common Pleas of Philadelphia County for a writ of *certiorari*. We affirm.

The trial court summarized the procedural history of this case as follows:

> [Appellant] was arrested on April 27, 2013, and charged with knowingly or intentionally possessing a controlled substance by a person not registered under the [A]ct, 35 P.S. § 780-113 §§ (a)(16).  On September 16, 2013, the matter commenced before the Philadelphia Municipal Court with [Appellant's] counsel, Beverly Beaver, Esq., proceeding by way of a motion to suppress any and all physical evidence recovered from [Appellant] by members of the Philadelphia Police Department. Ms. Beaver's motion alleged that the police officers lacked probable cause or reasonable suspicion to stop, arrest, and search [Appellant].  At the motion to suppress hearing, the Commonwealth presented live testimony of Philadelphia Police Officer Daniel Caban.  At the culmination of the evidence

presented, the lower court denied [Appellant's] motion to suppress.

The Commonwealth then moved to incorporate all relevant, non-hearsay testimony from the motion record into trial, as well as C-1 (the property receipt) and C-2 (the seizure analysis indicating a positive presence of cocaine base). A bench trial was then held on that same day, and [Appellant] was found guilty, beyond a reasonable doubt, of the above charged offense; he was then sentenced to 14 months of reporting probation.

Ms. Beaver then filed a motion to vacate the sentence so she could make additional arguments. The lower court granted that motion, and it held a hearing on November 19, 2013. There, Ms. Beaver argued that her motion to suppress should be granted not because the officer's actions were unlawful under the law that he knew at the time, but because the statute is unconstitutional. Further, Ms. Beaver alleged that the statute violates the Equal Protection Clause of both the Pennsylvania and United States Constitutions in that the law is not narrowly tailored to advance a compelling government interest. Ms. Beaver's arguments were held under advisement and then later denied. On December 27, 2013, [Appellant] was resentenced again to 14 months of reporting probation.

[Appellant] then filed a petition for Writ of Certiorari seeking review of the lower court's denial of his motion to suppress. This Court held a hearing on April 14, 2014, and denied [Appellant's] petition. [Appellant] timely filed his Notice of Appeal on May 9, 2014. Pursuant to this Court's directive, [Appellant] timely filed his 1925(b) statement of errors complained of on appeal on June 10, 2014.

Trial Court Opinion, 10/30/14, at 1-3 (internal citations omitted).

The trial court made the following factual findings:

1.    On April 27, 2013, Officer Daniel Caban was on a tour of duty as a SEPTA police officer in the city and county of Philadelphia. Between the hours of 6:30 p.m. and 7 p.m., Officer Caban's tour of duty took him to the area of the 2700 block of Kensington Avenue.

2.	There, Officer Caban encountered [Appellant] at the Kensington and Somerset Station. Officer Caban was standing at the platform of the station looking down where he observed [Appellant] drinking out of an open can of Coors Light beer.

3.	Officer Caban intended to head to the highway and perform an investigative stop, but he noticed that [Appellant] was actually coming towards the station. Officer Caban saw [Appellant] walking up the westbound stairway.

4.	Officer Caban stopped [Appellant] there in the middle of the stairway. [Appellant] passed right by the officer, and Officer Caban called him back. [Appellant] stumbled. Officer Caban could tell when he started to talk to the man that he was a little intoxicated at that time. [Appellant's] eyes were glassy and he displayed instability of balance. [Appellant] reportedly put both his hands on the steps in an effort to maintain or regain his balance when the officer asked him for his identification as he was walking up the stairway.

5.	Officer Caban then informed [Appellant] that he was being placed under arrest for an open container violation.

6.	Officer Caban then effectuated the arrest and searched [Appellant's] person incident to that arrest. Officer Caban recovered a clear plastic bag containing 19 small little purple packets containing a white chunky substance, alleged crack cocaine. [Appellant] was taken to East Detectives at the time and the items were placed on a Property Receipt No. 3694875.

7.	The seizure analysis subsequently indicated a positive presence of cocaine base.

8.	The lower court found [Appellant] guilty of intentional possession of a controlled substance and sentenced him to 14 months of reporting probation.

Trial Court Opinion, 10/30/14, at 3-4 (internal citations omitted).

Appellant presents the following issue for our review:

Did not the lower court err when it denied Appellant's motion to suppress physical evidence, when it held that 53 P.S. § 13349, authorizing the arrest of an individual for a violation of

any local ordinance in a city of the first class when such a broad right to arrest for a violation of a local ordinance does not exist in cities of any other class in the Commonwealth of Pennsylvania, does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, Article III, § 20 of the Pennsylvania Constitution, the 4th and 14th Amendments to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?

Appellant's Brief at 2.

Appellant maintains that 53 P.S. § 13349 is unconstitutional because it violates the equal protection clauses of the United States and Pennsylvania Constitutions. Appellant's Brief at 14. Appellant further asserts that the statute implicates a fundamental right and therefore must satisfy the strict scrutiny standard of review. *Id.* at 21-25. Appellant argues that the statute is unconstitutional because it "does not meet a compelling government interest and is not narrowly tailored." *Id.* at 14, 27-30. Appellant contends that the statute allows for similarly situated individuals to be subject to disparate treatment because the statute allows for the arrest and search of individuals pursuant to local ordinance in some jurisdictions in Pennsylvania but not in other jurisdictions. *Id.* at 15-16, 32. As a result, Appellant argues, the motion to suppress should have been granted because the law permitting arrests for violations of a local ordinance in cities of the first class is unconstitutional. *Id.* at 33.

We review a trial court's decision regarding a motion to suppress according to the following standard:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. McRae*, 5 A.3d 425, 429 (Pa. Super. 2010).

In addressing Appellant's claim, we note the following tenets: "Legislative acts of the general assembly enjoy a strong presumption of constitutionality and the party challenging the legislation bears a heavy burden of persuasion. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the constitution...." *DeFazio v. Civil Service Commission of Allegheny County*, 756 A.2d 1103, 1105 (Pa. 2000) (internal citations and quotation marks omitted).

[I]t is now generally accepted that the meaning and purpose of the Equal Protection Clause of the United States Constitution, *see* U.S. Const. amend. XIV, § 1, and the state Constitution's prohibition against special laws, *see* Pa. Const. art. III, § 32, are sufficiently similar to warrant like treatment, and that contentions concerning the two provisions may be reviewed simultaneously. In particular, Article III, Section 32 and the Equal Protection Clause both reflect the principle that like persons in like circumstances must be treated similarly.

Equal protection principles do not, however, vitiate the Legislature's power to classify, which necessarily flows from its general power to enact regulations for the health, safety, and welfare of the community. Nor do they prohibit differential treatment of persons having different needs, provided the classifications at issue bear a reasonable relationship to a legitimate state purpose. In this regard, a classification, though

- 5 -

discriminatory, will be deemed reasonable if any state of facts reasonably can be conceived to sustain it. However, a classification will be struck down if it is based upon artificial or irrelevant distinctions used for the purpose of evading the constitutional prohibition. In undertaking its analysis, a reviewing court is free to hypothesize reasons the Legislature might have had for the classification.

*Harrisburg School Dist. v. Zogby*, 828 A.2d 1079, 1088 (Pa. 2003) (some internal citations and quotation marks omitted).

It is well settled in this Commonwealth that "the Legislature is permitted to treat cities of different sizes differently, particularly as classifications of cities and school districts based upon population are deemed general legislation and are specifically authorized by our state Constitution." *Zogby*, 828 A.2d at 1089-1090.

The statute at issue in this case, 53 P.S. § 13349, provides as follows:

§ 13349. Summary proceedings for violation of ordinances

Any police officer or constable, upon view of the breach of any ordinance of any city of the first class,[1] is authorized to forthwith arrest the person or persons so offending, without any process, and to take said person or persons forthwith before any police magistrate or alderman of said city, who shall thereupon require bail for the appearance of said person at a time to be fixed for the hearing of said charge, and in default of bail to commit for a hearing; and at said hearing the case shall be proceeded with as if the parties were appearing before said magistrate or alderman upon a summons duly issued and returned served, or if both parties desire it the case may be entered and determined by the magistrate or alderman in like manner, without requiring bail or further continuance.

---

[1] Philadelphia is the only "city of the first class" in Pennsylvania. *Commonwealth v. Rose*, 755 A.2d 700, 703 n.3 (Pa. Super. 2000).

Philadelphia's "open container" ordinance prohibits the public consumption or possession of an open container of alcoholic beverages in a public right-of-way. Philadelphia Code § 10-604. It is undisputed that Appellant violated this ordinance when Officer Caban observed Appellant drinking from an open can of beer in a public right-of-way.

We have stated the following when reviewing an equal protection challenge:

> When addressing an equal protection challenge, we must initially ascertain the appropriate degree of scrutiny to which the challenged act is to be subjected. Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard of review is determined by examining the nature of the classification and the rights thereby affected.
>
> In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.
>
> The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.
>
> The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*Commonwealth v. Beshore*, 916 A.2d 1128, 1133-1134 (Pa. Super. 2007)

Appellant maintains that because the statute authorizes the arrest of an individual, it necessarily implicates the right to be free from an unreasonable search and seizure. Appellant's Brief at 21. Moreover, Appellant asserts, the right to be free from unreasonable searches and seizures is a "fundamental right." *Id.* at 22. As a result, Appellant argues, the statute must satisfy the "strict scrutiny" standard of review. *Id.* at 24.

Upon review of the challenged statute, we note that it allows an officer to conduct an arrest of an individual in a city of the first class if that individual violates a local ordinance in the officer's presence. The officer's ability to arrest an individual does not stand alone. Instead, the power to arrest must be triggered by the violation of a local ordinance. In this case, the triggering element was Appellant's violation of the open container ordinance.

After review of both the local ordinance § 10-604 and 53 P.S. § 13349, we cannot agree that either implicates a fundamental right. First, we cannot conclude that Appellant has a fundamental right to drink from an open container in a public right-of-way. Moreover, we discern no constitutional right implicated by a **lawful** arrest. Indeed, Appellant concedes that the United States Supreme Court "has held that it is constitutionally permissible to arrest an individual simply for the violation of a summary or fine-only offense without the presence of other circumstances that could justify arrest." Appellant's Brief at 31.

Furthermore, this statute classifies on the basis of population and locality. The classification is not based on a suspect trait such as race or national origin. Thus, a strict scrutiny standard of review is not implicated.

Additionally we conclude, and Appellant does not argue, that the classification is not based upon grounds which would merit an intermediate or a heightened standard of review. Thus, we agree with the trial court's conclusion that the rational basis test is the proper level of scrutiny to be applied in the instant matter.

Our Supreme Court has established the following test when applying the rational basis test:

> In applying the rational basis test, we have adopted a two-step analysis. First, we must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests.

*Commonwealth v. Albert*, 758 A.2d 1149, 1152 (Pa. 2000).

Given a rational-basis review, we find the statute serves a legitimate state interest, namely the promotion of public safety and general welfare. Considering the densely populated city, the state has a legitimate interest in prohibiting the consumption of alcoholic beverages in public right-of-ways. We conclude that a legitimate state interest in curbing consumption of alcoholic beverages in public, and the potential related conduct, in order to promote public safety and general welfare in Philadelphia is served by this statute, and equal protection is not thereby offended.

We find further support for this conclusion in language provided by our Supreme Court:

> [M]ere identification of a geographic disparity is insufficient to establish a constitutional violation. ***See McGowan v. Maryland***, 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (explaining that equality guarantees relate to "equality between persons as such, rather than between areas, and ... territorial uniformity is not a constitutional prerequisite"). Thus, such variations may be constitutionally valid, assuming the presence of a sufficient governmental interest (for example, rational basis or compelling interest, depending upon the character of the interest involved).

***Commonwealth v. Bavusa***, 832 A.2d 1042, 1052 (Pa. 2003).

Furthermore, we cannot conclude that the statute created a suspect geographic class. It is well-settled that "a statute may be deemed *per se* unconstitutional if, under the classification, the class consists of one member and is closed or substantially closed to future membership." ***Markovsky v. Crown Cork & Seal Co.***, 107 A.3d 749, 757 (Pa. Super. 2014). While Philadelphia is currently the only member of the first class based on its population, having only one member does not *per se* invalidate a statute. ***Harristown Dev. Corp. v. Commonwealth Dept. of General Services***, 614 A.2d 1128, 1132, n.9 (Pa. 1992). The class at issue is not closed. Rather, it remains open, and the law has been crafted so as to allow additional cities to join the class should they become sufficiently large in

- 10 -

population.[2]  As the class is not closed, the classification of one member is not unconstitutional.  *Id.*

Because 53 P.S. § 13349 is not unconstitutional, the arrest of Appellant for violation of the local ordinance was lawful.  Moreover, the search of Appellant's person pursuant to that arrest was lawful.  Accordingly, we conclude that the Municipal Court properly denied Appellant's motion to suppress the contraband discovered on Appellant's person during the search pursuant to his arrest.  Thus, the Court of Common Pleas did not commit an abuse of discretion in declining to grant Appellant's writ of *certiorari*.

Order affirmed.

_____

[2]  The statute defining a city of the first class, *inter alia*, provides as follows:

**§ 101. Purpose of classification; division into classes**

For the purpose of legislation regulating their municipal affairs, the exercise of certain corporate powers, and having respect to the number, character, powers, and duties of certain officers thereof, the cities now in existence and those hereafter created in this Commonwealth shall be divided into four classes:

Those containing a population of one million or over shall constitute the first class.

53 P.S. § 101.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2015